UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **AMBER COMEAUX, ET AL.** | : | **CIVIL ACTION NO. 21-CV-1617** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **SASOL CHEMICALS (USA) LLC, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Remand filed by plaintiffs Amber Comeaux and Carl Comeaux (individually and on behalf of their minor child), Franky Davis, Stacie Fontenot, Jacqueline Marcentel, and Aquanilla Sibley (collectively, "Plaintiffs"). Doc. 15.  The motion is opposed by defendant Sasol Chemicals (USA) LLC ("Sasol"). Doc. 17. The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the local rules of court.

For the reasons stated herein**, IT IS RECOMMENDED** that the plaintiffs' motion be **DENIED** and that non-diverse defendants Eric Walker, Graham Smith, Bruce Hubbard, Andrew Lavin, Michael Kane, Paul Hippman, Michael McCarble, and Michael Thomas be dismissed from this action without prejudice.

**I.**
**BACKGROUND**

Plaintiffs filed suit in the 14th Judicial District Court, Calcasieu Parish on April 26, 2021, alleging that they contracted cancer as a result of exposure to Ethylene Oxide ("EtO") from the nearby chemical plant owned and operated by Sasol. In addition to naming Sasol, plaintiffs also sued nine individuals currently or formerly employed by Sasol: Peter Potgeiter, Eric Walker,

Graham Smit, Bruce Hubbard, Andrew Lavin, Michael Kane, Paul Hippman, Michael McCarble, and Michael Thomas (collectively, "the individual defendants"). Plaintiffs allege that each individual defendant was designated to the Louisiana Department of Environmental Quality ("LDEQ") as a "Permit Responsible Official" ("PRO") for the permits under which the facility operated and emitted EtO from 2013 to 2020. Doc. 1, att. 3, ¶ 53. It is alleged that the individual defendants as PROs were personally responsible for ensuring the facility's compliance with these permits and for overall operations related to EtO emissions from the facility. *Id*. at ¶ 57. Plaintiffs state that the individual defendants had the authority to shut down the emissions and implement changes to reduce dangerous emissions to protect the community, but none did so. *Id*. at ¶ 59. Plaintiffs allege claims of negligence and battery against the individual defendants. *Id*. at ¶¶ 102-202.

Sasol removed the action on June 11, 2021, asserting that this court has jurisdiction pursuant to both the diversity jurisdiction statute, 28 U.S.C. § 1332, and the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Doc. 1, pp. 2-7. In its Notice of Removal, Sasol asserts that the amount in controversy is met and that there is complete diversity because plaintiffs are citizens of Louisiana, Sasol is a citizen of Delaware and Texas, and the citizenship of the individual defendants, some of whom are Louisiana citizens, should be disregarded because they were improperly joined. *Id*. at p. 2. Specifically, Sasol states that there is no reasonable possibility of recovery against the individual defendants because they did not owe a duty to the plaintiffs as it relates to the facility's emissions. The Notice states that removal is procedurally proper because the individual defendants were not required to consent as being improperly joined. *Id*. at p. 8. Alternatively, Sasol states that removal is proper under the federal officer removal statute because it has asserted a colorable defense, is a "person" as defined by the statute, has acted pursuant to a

federal officer's directions, and because the charged conduct is related to an act pursuant to a federal officer's directions. *Id*. at pp. 6-7.

Plaintiffs timely filed the instant Motion for Remand. Doc. 15. They argue that there is no complete diversity because Sasol cannot meet its burden to show that there is no possibility of recovery against the individual defendants, so their citizenship should be considered. Doc. 15, att. 1, pp. 12-23. Alternatively, plaintiffs assert that removal is not proper under the federal officer statute as Sasol has not acted pursuant to a federal officer's directions by simply complying with the law, nor has it asserted a colorable defense by claiming that the Clean Air Act preempts the plaintiffs' claims. *Id*. at pp. 23-30. Plaintiffs finally contend that Sasol failed to obtain consent of all properly joined defendants, because defendant Potgieter, a citizen of Texas who should be considered properly joined, did not consent to removal. *Id*. at p. 30.

In response, Sasol reiterates and expands on the arguments made in its Notice of Removal and argues that there is no reasonable basis for predicting that Louisiana law would allow recovery against the individual defendants. Doc. 17, pp. 18-29. Specifically, Sasol contends that (1) plaintiffs fail to state a claim because plaintiffs have not established that Sasol delegated a duty to the individual defendants or that the individual defendants breached any duty as required by *Canter v. Koehring*; (2) record evidence, specifically declarations submitted by the individual defendants, establishes the lack of duty owed by the individual defendants; and (3) plaintiffs failed to allege the requisite intent for a battery claim. *Id*. In addressing the consent issue, Sasol argues that none of the individual defendants are "properly joined" and thus not required to consent and alternatively, consent was not required in this case because this action was not removed "solely" under § 1441. *Id*. at pp. 29-30. Finally, Sasol reiterates its position that the federal officer removal statute provides an independent basis for removal. *Id*. at pp. 30-33.

Plaintiffs replied and reasserted its argument that removal under the federal officer removal statute was improper and that Sasol has still failed in its burden to show improper joinder. Doc. 18. They additionally argue that (1) the declarations are not dispositive of plaintiffs' allegations; (2) prior case law with similar facts supports their claims for battery; and (3) that Potgeiter's consent was required because the case was removed "solely" under § 1441 since the federal officer removal statute did not authorize removal. *Id*. at pp. 4-5, 7-10.

Sasol filed a sur-reply, reasserting its previous arguments and also contending that Potgieter is a "nominal" defendant whose consent was not required. Doc. 23.[1]

## II.
### LAW AND ANALYSIS

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and by statute.'" *Gunn v. Minton,* 133 S. Ct. 1059, 1064 (2013) (citing *Kokkonen v. Guardian Life Ins. Co. of America,* 114 S. Ct. 1673, 1675 (1994)). Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1441(a). However, the federal district court must remand the action to state court if it finds that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removing defendant bears the burden of showing that removal was procedurally proper, and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

---

[1] Sasol has also since filed several Notices of Supplemental Authority [docs. 24, 25, 27, 28, 29], which provided notices of several decisions rendered by other courts denying Motions to Remand based on significantly similar allegations in the complaint and arguments made. They are *Ellis v. Evonik Corp*., 2021 WL 4862146 (E.D.La. 2021), *Cambre v. Union Carbide Corporation*, 2022 WL 671655 (E.D.La. 2022), *Bureau v. BASF Corporation*, 2022 WL 807372 (M.D.La. 2022), and *Bell v. Dow Chemical Company*, No. 21-326 (M.D. La. 2022).

### A. *Diversity of Citizenship and Improper Joinder*

District courts have original jurisdiction over all civil actions where the amount in controversy exceeds $ 75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1). The diversity provisions of § 1332 require complete diversity among the parties. *Caterpillar Inc. v. Lewis*, 117 S.Ct. 467, 472 (1996).

A court may disregard a non-diverse party's citizenship for purposes of determining subject matter jurisdiction if the party was improperly joined. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018). If removal is based on a claim that a non-diverse party has been improperly joined, then the removing party must establish either "actual fraud in the pleading of jurisdictional facts" or an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R.,* 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). The party seeking removal based on improper joinder of a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper. *Id.* at 574. Only the latter method is relevant here because defendants did not allege actual fraud. Thus, the relevant question is whether defendants have shown that there is no reasonable possibility of recovery against the non-diverse defendant in state court. *Id*. Under this test, the court looks to whether there is "a reasonable basis" for predicting that the plaintiff can recover on any of his claims against the non-diverse defendant. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 312 (5th Cir. 2002) (emphasis added). The possibility of liability must be "reasonable, not merely theoretical." *Id.* The removal statute is to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem*. Co., 491 F.3d 278, 281-82 (5th. Cir. 2007).

To determine whether the defendant has demonstrated whether plaintiffs have "no possibility of recovery" against the diversity-destroying defendant, the court conducts a "Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573. When conducting a Rule 12(b)(6) analysis, the court examines whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief. *Id*. (citing *Twombly*, 127 S.Ct. 1955).

In the improper joinder context, however, the scope of the inquiry may sometimes be broader than that of a 12(b)(6). *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007). While a traditional 12(b)(6) analysis looks only to the complaint, in the improper joinder inquiry, where a plaintiff has "misstated or omitted discrete facts that would determine the propriety of joinder," the court may "pierce the pleadings" and also consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim. *Smallwood*, 385 F.3d at 573; *Campbell,* 509 F.3d at 669. In doing so, the court must consider all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. *Travis*, 326 F.3d at 649. Any contested issues of fact or ambiguities of state law must be resolved in favor of the plaintiff. *Id*.

Sasol contends that plaintiffs made several misstatements as it relates to the nature and scope of the individual defendants' knowledge and authority by virtue of their employment with Sasol and urges us to pierce the pleadings to consider several submitted declarations. Doc. 17, p.

22. As these facts bear on the propriety of the individual defendants' joinder, we will "pierce the pleadings" and also consider the declarations as part of our improper joinder inquiry. *Smallwood*, 385 F.3d at 573.

Plaintiffs argue that the individual defendants were properly joined because there exists a possibility that they could be found liable under state law. Plaintiffs rely on *Canter v. Koehring,* 283 So.2d 716 (La. 1973), for the proposition that both their negligence and battery claims are sufficiently alleged. Sasol argues that there is no reasonable basis for predicting that Louisiana law would allow recovery against the individual defendants because plaintiffs fail to allege any delegation to the employees of a personal duty owed to plaintiffs as required by *Canter*, and the individual defendants lacked the requisite intent for a battery claim. We analyze both claims in turn.

**1. Negligence**

The Louisiana Supreme Court, in *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973), set forth a four-part test to determine whether an employee is individually liable to third persons. The Fifth Circuit in *Guillory v. PPG Indus., Inc.* summarized the *Canter* requirements as:

> (1) the employer defendant must owe a duty of care to the plaintiffs, breach of which causes the damage for which recovery is sought;
>
> (2) this duty must have been delegated to the defendant; and
>
> (3) the defendant must have breached the delegated duty through personal fault.

*Guillory v. PPG Industries, Inc.,* 434 F.3d 303, 312 (5th Cir. 2005) (citing *Canter*, 283 So.2d at 721). *Canter* also offers a defense, in that "personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment." *Id*. In sum, to succeed under *Canter*, "the employee 'must have

a personal duty toward the injured plaintiff, breach of which specifically has caused the plaintiff's damages.'" *Bertrand v. Fischer*, 2009 WL 5215988, at *5 (W.D. La. 2009).

Here, plaintiffs seek to impose *Canter* liability for negligence on the individual defendants pursuant to their designations as PROs. Plaintiffs allege that, as PROs, the individual defendants were tasked with ensuring the truth, completeness, and accuracy of Sasol's regulatory submissions to the LDEQ. Doc. 1, att. 3, ¶ 54. In addition to this responsibility, plaintiffs allege that, as PROs, the individual defendants were directly responsible for EtO emissions and were personally responsible for ensuring Sasol's compliance with environmental regulations and laws and the permits issued by the LDEQ to Sasol. Accordingly, plaintiffs claim that, in connection with being designated as a PRO, "Sasol delegated to the [individual defendants] the duty to ensure that the operations of the facility did not endanger the neighboring community through unsafe operations or dangerous levels of emissions." *Id*. Plaintiffs state that the individual defendants had the authority to shut down the emissions and implement changes to reduce dangerous emissions to protect the community, but none exercised their authority to so. *Id*. at ¶ 59. Plaintiffs allege that the individual defendants "knew or should have known" that the surrounding community was being exposed to unsafe levels of EtO and faced an increased risk of developing cancer as a result. *Id*. at ¶¶ 60-68.

Plaintiffs' allegations are directly undermined by the individual defendants' declarations. The individual defendants declared, under penalty of perjury, that PRO status did not confer a responsibility to reduce Sasol's emissions below permitted amounts or cease such operations. Doc. 17, att. 1, ¶¶ 7-8; statements adopted by atts. 2-9. They state that it is only Sasol that bears responsibility for ensuring its compliance with applicable regulatory limitations and Sasol has not delegated that duty to any individual employee. *Id*. at ¶ 7. They state that the only duty owed as a

PRO is to assure that Sasol's submissions are true, accurate and complete, but that duty is owed only to the EPA and LDEQ, not the plaintiffs. *Id*.

When considering both the complaint and declarations, it is evident that plaintiffs have no possibility of recovery against the individual defendants as they cannot establish the second prong of the *Canter* analysis. Stated another way, plaintiffs' allegations fail to show that the duties which they claim the individual defendants owed to plaintiffs were delegated to them by Sasol. Even assuming that Sasol owed a duty of any sort to the community surrounding the facility, the individual defendants declare that Sasol did not delegate any such duty to the individual defendants in designating them as PROs and plaintiffs have not set forth sufficient facts to rebut this. In fact, the record is altogether devoid of any factual allegations suggesting that the individual defendants were tasked with independently assessing the safety of the emission levels and/or stopping or changing the facility's procedures if they deemed said levels to be unsafe. The designation as PRO brings no other responsibility than that to ensure the accuracy, truth, and completeness of Sasol's emission reports. These are the types of "general administrative" responsibilities contemplated by the defense iterated in *Canter,* precluding liability from being imposed on the employee. *Ellis v. Evonik Corporation*, 2021 WL 4862146, at *4 (E.D.La. 2021). There is altogether no factual support for the allegation that PRO status makes an individual responsible for ensuring Sasol's compliance with regulations or that it brings with it a duty to protect the public from emission-related activity.

Similarly insufficient is plaintiffs' argument that PRO status *combined with* the individual defendants' position and experience shows that the individual defendants possessed decision and policy-making authority over the facility's operations and handling of EtO emissions. Plaintiffs

rely on the definition of a "Responsible Official" in Louisiana, which states that a "Responsible Official" for a corporation like Sasol is someone who is:

> a president, secretary, treasurer, or vice-president of the corporation in charge of a principal business function, or any other person who performs similar policy or decision making functions for the corporation, or a duly authorized representative of such person if the representative is responsible for the overall operation of one or more manufacturing, production, or operating facilities applying for or subject to a permit . . .

LA. ADMIN. CODE tit. 33, pt. III § 502. Plaintiffs argue that this definition shows that a PRO is someone "who [was] delegated responsibility, management and control functions over the facility's EtO . . ." Doc. 15, att. 1, p. 10.

We disagree. Just as plaintiffs have failed to allege the delegation of a duty as a PRO, so too have they failed to allege a delegation of a duty based on the individual defendants' employment status as managers or other senior-level employees. The provision directing who may be designated as a PRO does not require the individual to have authority to determine what emissions levels are safe, to require changes in emissions levels, to shut down the facility, or at the very least, to even understand emission levels or their implications. *Ellis*, 2021 WL 4862146 at *5. There is no requirement, nor even a suggestion, that a PRO must be someone whose job involves such emission-related abilities as plaintiffs suggest. Moreover, the complaint is completely devoid of specificity regarding the individuals' job responsibilities outside of their PRO designation. Plaintiffs solely allege the job title of each individual defendant and that some "hold[ ] a degree in chemical engineering." *See* Doc. 1, att. 3, ¶¶ 60-68. These allegations, without further information, once again amount to unsupported conclusory assertions. We decline to find that Sasol delegated any duty to its employees merely because of their job title and without any factual assertion otherwise.

### 2. Battery

As *Canter* does not clearly apply to intentional torts, we now analyze separately whether plaintiffs' claims for battery are sufficient. *See Ellis,* 2021 WL 4862146, at *7 ("*Canter* speaks only to [negligence theories] and suggests no application to intentional torts").

Under Louisiana law, a battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987). Additionally, for the act to be intentional, the actor must either "(1) consciously desire the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) know that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Batiste v. Bayou Steel Corp*., 45 So. 3d 167, 168 (La. 2010). "'Substantially certain to follow' requires more than a reasonable probability that an injury will occur and 'certain' has been defined to mean 'inevitable' or 'incapable of failing.'" *Id*. (internal citations omitted). "Mere assertions of intentional acts are insufficient to establish intent." *Fanguy v. Eastover Country Club L.L.C*., 2002 WL 1888901 at *3 (E.D. La. 2002).

Plaintiffs' battery claims similarly fail, as the allegations are insufficient to support the requisite intent. Plaintiffs conclusively allege that the individual defendants "intended" for the facility to release the EtO emissions, "knew" the emissions would contact the plaintiffs, and "knew to a substantial certainty" that the contact would cause serious health risks and increased risks of cancer. These allegations amount to "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949. Plaintiffs merely recited the elements of battery in a conclusory fashion; absent from their complaint are any facts to support the allegation that the individual defendants knew with substantial certainty that their conduct would result in the EtO emissions contacting the plaintiffs in a harmful manner. Further, even were we to accept as true that the individual

defendants did know of the harmful effects of EtO emissions, "[m]ere knowledge and appreciation of risk does not constitute intent*." Evans v. Int'l Paper Co*., 2011 WL 1898912, at \*6 (W.D. La. 2011); *Armstead v. Schwegmann Giant Super Markets, Inc*., 618 So. 2d 1140, 1142 (La. App. 4 Cir. 1993) ("[M]ere knowledge ... that a machine is dangerous and that its use, therefore, creates a high probability that someone will eventually be injured is not sufficient to meet the 'substantial certainty' requirement."). Our findings are consistent with other courts that have similarly rejected battery claims arising from alleged exposure to hazardous conditions. *See Bureau v. BASF Corporation*, 2022 WL 807372, at \*11 (M.D.La. 2022); *Ellis*, 2021 WL 4862146, at \*8; *Butler v. Denka Performance Elastomer LLC*, 2019 WL 1160814, at \*9 (E.D. La. 2019) (dismissing battery claim where plaintiffs failed to allege facts indicating that defendant knew that harm was substantially certain or consciously desired to harm plaintiffs by continuing to manufacture chloroprene and allowing excessive emissions).

Plaintiffs' causes of action against the individual defendants are each without merit. Thus, there is no reasonable basis to predict that the plaintiffs would be able to recover against the in-state defendants. Accordingly, joinder of the individual defendants was improper and we recommend that the in-state individual defendants be dismissed.[2] Because the remaining defendants, Sasol and Potgieter, are diverse, this court has proper jurisdiction under 28 U.S.C. § 1332.

Having found that there exists proper diversity jurisdiction, the court need not address whether it has subject matter jurisdiction under 28 U.S.C. § 1442(a)(1). *See Bureau,* 2022 WL 807372, at \*11 (it was unnecessary to address jurisdiction under the federal officer statute where the court already found diversity jurisdiction was proper) (citing *Coerver v. Allstate Ins. Co*., 2007

---

[2] *See* discussion *infra* at Section B.

WL 2029482, at *2 (E.D. La. 2007) ("[B]ecause [defendant] properly removed this case on the bases of original jurisdiction and federal question jurisdiction, there is no need to consider [its alternative] jurisdictional claims....")).

### B. Failure to Obtain Consent

Plaintiffs contend that Sasol failed to obtain the consent of Peter Potgeiter, a diverse individual defendant who is a citizen of Texas and who they argue was properly joined.

"When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Plaintiffs argue that a finding of improper joinder affects only the non-diverse individual defendants and has no application to a diverse defendant, so as a "properly joined" defendant, Potgeiter's consent to remove was required as position supported by jurisprudence. *See Smallwood*, 385 F.3d at 574 ("A claim of improper joinder by definition is directed toward the joinder of the in-state party, a simple but easily obscured concept."); *Tipton v. Landen*, 2016 WL 919539, at *5 (W.D.La. 2016) ("the improper joinder doctrine is not applicable to a diverse defendant."). Thus, Potgeiter was properly joined and under the general rule, he should have been required to consent to removal.[3]

Contrary to plaintiffs' position, the instant removal did not require Potgeiter's consent because he is a nominal defendant. "Nominal" or "formal" parties need not join in the removal petition and are thus an exception to the general rule. *Farias v. Bexa County Bd. of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 871 (5th Cir. 1991). A nominal party is one that is "neither necessary nor indispensable to join in the action." *Id*. To establish that a

---

[3] Plaintiffs also urge us to find that consent was required under § 1446 because the action was removed "solely" under § 1441(a) since they contend § 1442 did not authorize removal. Doc. 18, p. 4. Because we have found Potgeiter to be a nominal defendant, a decision even in favor of plaintiffs' position would not change our conclusion that Potgeiter's consent was not required. Thus, we find it unnecessary to address this argument.

party is nominal, the removing defendant must show "that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendant[ ] in state court." *Id*. This test is "substantially similar to the test for improper joinder." *Chavez v. Goodyear Tire & Rubber Co.*, 2018 WL 501092, at *3 (E.D. Tex. 2018). Thus, for the same reasons we previously articulated in finding that the non-diverse defendants were improperly joined, we similarly find that Potgieter is a nominal defendant whose consent was not required. Accordingly, Sasol's removal was procedurally proper.

We note, however, that despite our finding that there is no possibility that plaintiffs would be able to establish a cause of action against Potgieter, dismissal of a nominal defendant is not appropriate action on a Motion to Remand. *See Bureau*, 2022 WL 807372 at *13. Accordingly, we cannot recommend dismissal of defendant Potgieter at this juncture.

### III.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion to Remand [doc. 15] be **DENIED** and that non-diverse defendants **ERIC WALKER, GRAHAM SMIT, BRUCE HUBBARD, ANDREW LAVIN, MICHAEL KANE, PAUL HIPPMAN, MICHAEL MCCARBLE,** and **MICHAEL THOMAS** be dismissed from this action without prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by shall bar an aggrieved party from

attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.

      THUS DONE AND SIGNED in Chambers this 28th day of April, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE